# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| JEREMY BRADLEY PEARSON, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) No. 2:19-cv-00041-RLW |
| FRANK GITTEMEIER, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on review of plaintiff's second amended complaint pursuant to 28 U.S.C. § 1915. For the reasons discussed below, the Court will direct the Clerk of Court to issue process on defendants Frank Gittemeier and Charles Peepers in their individual capacities.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73

(8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Background

Plaintiff is a pro se litigant currently incarcerated at the Moberly Correctional Center (MCC) in Moberly, Missouri. On May 23, 2019, he filed a civil rights complaint pursuant to 42 U.S.C. § 1983, naming Frank Gittemeier and Charles Peepers as defendants. (Docket No. 1). In the complaint, plaintiff alleged that excessive force was used against him, and that following this use of force, he was denied medical care. (Docket No. 1 at 4). Defendants were sued in both their official and individual capacities. (Docket No. 1 at 2-3). Along with the complaint, plaintiff also filed a motion for leave to proceed in forma pauperis and a motion to appoint counsel. (Docket Nos. 2-3).

2

On July 12, 2019, plaintiff filed a motion for leave to amend his complaint. (Docket No. 4). In the motion, plaintiff stated that he needed to amend his complaint to be "more specific to the actual event itself, what led up to it, the wrong committed to me, the [injury] and the relief that I am seeking." However, plaintiff did not attach a proposed amended complaint to the motion.

On July 16, 2019, the Court granted plaintiff's motion for leave to proceed in forma pauperis and assessed an initial partial filing fee. (Docket No. 6). The Court also denied plaintiff's motion for appointment of counsel. Finally, the Court denied plaintiff's motion to amend because he had not submitted a proposed amended complaint with the motion. The Court directed the Clerk of Court to send plaintiff a copy of the Court's prisoner civil rights form, and gave him thirty days in which to file a motion to amend, along with a proposed amended complaint.

On July 25, 2019, before plaintiff received a copy of the Court's July 16, 2019 order, plaintiff filed a motion to correct a docket entry that incorrectly listed him as the defendant. (Docket No. 7). Plaintiff also filed an amended complaint (Docket No. 8), a motion for leave to proceed in forma pauperis (Docket No. 9), and a motion to appoint counsel (Docket No. 10).

Shortly thereafter, plaintiff received the Court's order of July 16, 2019, and filed a motion to amend on July 29, 2019. (Docket No. 11). Along with the motion, he included a proposed amended complaint. (Docket No. 12).

The Court will treat the amended complaint received on July 29, 2019 as the operative complaint, superseding the previous complaints. However, the Court has also reviewed the exhibits attached to plaintiff's original complaint, as requested. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes").

## The Amended Complaint

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. He names Captain Frank Gittemeier and Sergeant Charles Peepers as defendants. (Docket No. 12 at 2-3). Both men are correctional officers at MCC. They are sued in their individual capacities only.

On January 13, 2019, while an inmate at MCC, plaintiff was placed on suicide watch. (Docket No. 12 at 3). According to plaintiff, he was "mentally broken and suicidal." At around 4:00 p.m., Captain Gittemeier came to plaintiff's cell to speak with him "regarding a discrepancy [he] had with food service." Captain Gittemeier advised plaintiff that he had heard plaintiff's name "over the radio numerous times over the last three days," and that if he heard plaintiff's name one more time, he was going to "set [plaintiff's] ass on fire." Plaintiff states that Captain Gittemeier then denied him his evening meal.

At around 7:00 p.m., plaintiff asked Correctional Officer House for some tissue paper. Plaintiff used this tissue paper to cover a light fixture, in order to dim the light so he could sleep. (Docket No. 1 at 4). At no point was he told to remove the tissue.

Plaintiff states that around 9:00 to 9:30 p.m., Captain Gittemeier opened his cell door. Plaintiff stood up and was immediately "hit in the face with mace." He tried to turn his back, to avoid getting the mace in his face and eyes. He alleges that Captain Gittemeier emptied the entire contents of one can, before yelling: "Get it off the camera. Get it off the camera." Plaintiff told Captain Gittemeier that nothing was on the camera. Captain Gittemeier then began spraying plaintiff with a second can of mace. Plaintiff claims that he took the tissue off the light, but that Captain Gittemeier kept spraying him. He alleges that Captain Gittemeier never gave him a command before spraying him. He further alleges that he was not being disorderly or threatening to himself or others.

4

Sergeant Peepers was present with a video camera when Captain Gittemeier deployed his mace. (Docket No. 12 at 5). Plaintiff claims that he failed to intervene while Captain Gittemeier emptied both cans. He further asserts that Captain Gittemeier and Sergeant Peepers would not allow him to go to medical to wash the mace from his face and eyes. (Docket No. 12 at 4).

After the officers left, plaintiff attempted to wash the mace off by using the sink in his cell. (Docket No. 12 at 5). He claims that he began to hyperventilate and lost consciousness. When he regained consciousness, he was on the floor. As a result of his fall, he fractured his nose. Plaintiff states that he had a seizure, and that he has been treated for a history of seizures in the past.

Plaintiff reported his seizure and Sergeant Peepers came to speak with him. He states that he explained the situation to Sergeant Peepers, and said that he needed to go to medical. According to plaintiff, Sergeant Peepers said he had not seen plaintiff lose consciousness, and walked away.

Plaintiff accuses Captain Gittemeier of using excessive force in violation of his constitutional rights. (Docket No. 12 at 4). He further accuses Sergeant Peepers of failing to intervene and of being deliberately indifferent to his medical needs. (Docket No. 12 at 5). As a result of this incident, plaintiff states that he suffered a fractured nose, which has caused him breathing difficulties. (Docket No. 12 at 4).

Plaintiff seeks $500,000 in compensatory damages from each defendant, $500,000 in punitive damages from each defendant, and for a medical procedure to fix his nose. (Docket No. 12 at 6).

## Discussion

Plaintiff brings this civil action pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated by Captain Gittemeier's use of excessive force, and by Sergeant Peepers' failure to intervene and denial of medical care. Defendants are sued in their individual

5

capacities only. For the reasons discussed below, the Court will direct the Clerk of Court to issue summons on both defendants.

**A. Excessive Force Against Officer Gittemeier**

Plaintiff alleges that Captain Gittemeier used excessive force against him. The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992). *See also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment"). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). *See also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically"). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Here, plaintiff alleges that Captain Gittemeier entered his cell and, without issuing any commands or warnings, discharged two cans of mace at him. Plaintiff asserts that he was in compliance and not posing a threat to others or himself. Shortly before this incident occurred, plaintiff had an interaction with Captain Gittemeier in which Gittemeier threatened to "set [plaintiff's] ass on fire." The Court must accept these allegations as true. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019) (stating that court must accept the allegations

6

contained in the complaint as true, and make all reasonable inferences in favor of the plaintiff). As such, plaintiff's excessive force claim against Captain Gittemeier in his individual capacity is sufficient for purposes of § 1915 review.

### B. Failure to Intervene and Deliberate Indifference Claims Against Sergeant Peepers

Plaintiff alleges that Sergeant Peepers failed to intervene to stop Captain Gittemeier's use of mace against him. The Eighth Amendment imposes upon prison officials the obligation to restore control in tumultuous situations. *Buckner v. Hollins*, 983 F.2d 119, 121 (8th Cir. 1993). As such, under § 1983, a correctional officer can be held liable for failing to intervene in another officer's constitutional violation. *See Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981) (determining that a deputy could be held "jointly liable for failing to intervene if a fellow officer…was using excessive force and otherwise was unlawfully punishing the prisoner"); and *Buckner*, 983 F.2d at 121-22 (determining that state corrections officer had a duty to intervene on behalf of inmate being assaulted by a county corrections officer). "A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault." *Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994).

Here, plaintiff alleges that Sergeant Peepers was present, with a video camera, when Captain Gittemeier came into his cell and immediately began spraying him with mace. During this incident, plaintiff asserts that he was not disobeying any commands, refusing to comply, or acting in a threatening manner. Nonetheless, Captain Gittemeier continued to spray him, while Sergeant Peepers did not attempt to intervene or otherwise act to end the alleged assault. Accepting these allegations as true, plaintiff's failure to intervene claim against Sergeant Peepers in his individual capacity is sufficient for purposes of § 1915 review.

7

Plaintiff also alleges that Sergeant Peepers was deliberately indifferent to his medical needs. In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 795 (8th Cir. 2006). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

Here, plaintiff states that after being sprayed with mace, he began hyperventilating, had a seizure, and lost consciousness. When he regained consciousness, he was on the floor, and had injured his nose. Plaintiff alleges that he requested medical attention and explained the situation to Sergeant Peepers, including the fact that plaintiff was being treated for seizures. According to plaintiff, Sergeant Peepers responded by saying: "Well I didn't see it so [you're] beat." To plaintiff, this indicated Sergeant Peepers' intent to punish him by denying him medical care. After making this statement, Sergeant Peepers walked away. Accepting these allegations as true, plaintiff's deliberate indifference to medical needs claim against Sergeant Peepers in his individual capacity is sufficient for purposes of § 1915 review.

### C. Motion to Correct Complaint

Plaintiff has filed a document titled motion to correct complaint. (Docket No. 7). In the motion, plaintiff observes that in the docket text entries for Docket No. 1 and Docket No. 12, he is incorrectly listed as the defendant. This motion will be granted, and the Clerk of Court will be

directed to correct the docket text entries in Docket No. 1 and Docket No. 12 to reflect the fact that Jeremy Bradley Pearson is the plaintiff in this case, not a defendant.

### D. Motion to Proceed in Forma Pauperis

Plaintiff has filed a second motion for leave to proceed in forma pauperis. (Docket No. 9). The Court has already granted plaintiff leave to proceed in forma pauperis, and has assessed an initial partial filing fee of $1.70, which has been paid. The Court will therefore deny plaintiff's second motion to proceed in forma pauperis as moot.

### E. Motion to Appoint Counsel

Plaintiff has filed a second motion for appointment of counsel. (Docket No. 10). In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips*, 437 F.3d at 794.

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. Finally, plaintiff has not demonstrated any change in circumstances since he filed his

prior motion for appointment of counsel, which the Court denied on July 16, 2019. The Court will entertain future motions for appointment of counsel as the case progresses.

### F. Motion to Amend Complaint

Plaintiff has filed a motion to amend his complaint, as directed by the Court in its order of July 16, 2019. (Docket No. 11). Plaintiff's motion to amend will be granted.

### G. Motion for Status Conference

Plaintiff has filed a pro se motion for status conference. (Docket No. 16). The motion will be denied. However, the Clerk of Court will be directed to send to plaintiff an updated copy of the docket sheet, along with the instant memorandum and order.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to correct (Docket No. 7) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall correct the docket text entries in Docket No. 1 and Docket No. 12 to reflect the fact that Jeremy Bradley Pearson is the plaintiff in this case, not a defendant.

**IT IS FURTHER ORDERED** that plaintiff's second motion to proceed in forma pauperis (Docket No. 9) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's second motion for appointment of counsel (Docket No. 10) is **DENIED** at this time.

**IT IS FURTHER ORDERED** that plaintiff's motion to amend (Docket No. 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for status conference (Docket No. 16) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send to plaintiff an updated copy of the docket sheet, along with the instant memorandum and order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on defendant Frank Gittemeier in his individual capacity as to plaintiff's claim of excessive force. Defendant Gittemeier shall be served in accordance with the waiver agreement this Court maintains with the Missouri Attorney General's Office.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on defendant Charles Peepers in his individual capacity as to plaintiff's claims of failure to intervene and deliberate indifference to medical needs. Defendant Peepers shall be served in accordance with the waiver agreement this Court maintains with the Missouri Attorney General's Office.

Dated this 24th day of October, 2019.

_____
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE