UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| JEREMY B. PEARSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:19-CV-41 RLW |
| | ) |
| FRANK GITTEMEIER, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Frank Gittemeier, Charles Peeper, Dean Minor, Scott Weber, and the Missouri Department of Corrections' Motion to Dismiss Plaintiff Jeremy Pearson's Fourth Amended Complaint. (ECF No. 61).[1] Plaintiff opposes the Motion (ECF No. 66) and it is fully briefed. For the reasons below, the Motion will be granted in part and denied in part.

## BACKGROUND

Plaintiff brings this action under 42 U.S.C. § 1983 against the Missouri Department of Corrections ("MDOC") and several prison officials. (ECF No. 55). Plaintiff's Fourth Amended Complaint contains nine counts stemming from allegations that Defendant Captain Frank Gittemeier sprayed mace on Plaintiff while Defendant Sergeant Charles Peeper recorded the incident. *Id.* at ¶¶ 21-40. Plaintiff seeks compensatory damages, punitive damages, injunctive relief, costs, and attorneys' fees. *Id.* at p. 19.

---

[1] Plaintiff refers to Charles "Peepers" throughout his Fourth Amended Complaint. Defendants refer to Charles "Peeper." The Court will adopt the latter for the purposes of this Memorandum and Order.

Defendants assert they are entitled to sovereign immunity. (ECF No. 61). Defendants Gittemeier, Peeper, Minor, and Weber ("Individual Defendants") further claim they are entitled to qualified immunity in their individual capacities.[2] *Id.* Finally, Defendants argue that Plaintiff has failed to state a claim to relief that is plausible on its face. *Id.*

## LEGAL STANDARD

"To survive a motion to dismiss for failure to state a claim, the complaint must show the plaintiff is entitled to relief by alleging sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017) (internal quotation marks omitted) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all factual allegations and construes all reasonable inferences in the light most favorable to the nonmoving party. *Usenko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir.), *cert. denied*, 140 S. Ct. 607 (2019). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, a court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Legal conclusions must be supported by factual allegations to survive a motion to dismiss. *Id.*

## DISCUSSION

### I. Sovereign Immunity

Defendants contend they are entitled to sovereign immunity. Plaintiff argues that sovereign immunity does not bar claims for prospective injunctive relief. Each side is partially correct.

---

[2] Defendants state in their header to Part I that all Individual Defendants are entitled to qualified immunity. But Defendants only apply the standard to Gittemeier and Peeper. For that reason, the Court will not address qualified immunity as it relates to Weber and Minor.

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court held in 1890 that the same immunity applies to suits against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 14–15 (1890).

It is well established that the Eleventh Amendment bars suits against the state for monetary damages. *Edelman v. Jordan*, 415 U.S. 651, 663 (1973) (citations omitted). Government officials enjoy the same immunity because naming such an official in his official capacity is the same as naming the governmental entity that employs the official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, the Court will dismiss all claims for monetary relief against Defendant MDOC and the Individual Defendants in their official capacities.

The Eleventh Amendment does not, however, prohibit official-capacity claims for injunctive relief against state officials. *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). In addition to monetary relief, Plaintiff asks the Court to order Defendants to enforce policies, practices, and customs that provide inmates with reasonable access to medical care. Simply put, under *Ex parte Young* and its progeny, Plaintiff's constitutional claims for prospective injunctive relief against the Individual Defendants in their official capacities are tenable if they meet the pleading requirements. Here, however, the alleged violations occurred during Plaintiff's incarceration at Moberly Correctional Center. According to MDOC's Offender Search—of which this Court takes judicial notice[3]—Plaintiff is

---

[3] https://web.mo.gov/doc/offSearchWeb/offenderListAction.do?docId=534258 (last accessed January 31, 2022). Courts "may take judicial notice of a fact not in the record only where the fact is 'either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' Fed. R. Evid. 201(b). Facts capable of 'ready determination' must be 'widely available.' 21 Charles Alan Wright and Kenneth W. Graham, Jr., Federal Practice and Procedure § 5106, at 500 (1977)." *MacGregor v. Mallinckrodt, Inc.*, 373 F.3d 923,

no longer incarcerated at Moberly Correctional Center. A prisoner's claims for equitable relief against prison conditions are rendered moot by the inmate's transfer to another institution. *See, e.g., Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 835 (8th Cir. 2009); *Roubideaux v. N.D. Dep't of Corr. & Rehab.*, 570 F.3d 966, 976 (8th Cir. 2009). Because Plaintiff is no longer incarcerated at Moberly Correctional Center, his claims for injunctive relief concerning the conditions at the facility are moot. *Id.* Thus, the Court will dismiss the Individual Defendants in their official capacities and Defendant MDOC entirely.[4]

## II. Qualified Immunity

Defendants Gittemeier and Peeper argue they are entitled to qualified immunity in their individual capacities on the claim of deliberate indifference to a serious medical need. The Court disagrees.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" *Stark*

---

933-34 (8th Cir. 2004). Judicial notice of facts outside of the record is not appropriate "unless the facts are matters of common knowledge or are capable of certain verification." *American Prairie Const. Co. v. Hoich*, 560 F.3d 780, 798 (8th Cir. 2009) (quotation omitted).

[4] Even if Plaintiff's claims for prospective injunctive relief were not moot, the Court would still dismiss Defendant MDOC. Unlike state employees in their official capacities, state agencies may not be sued for prospective injunctive relief. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (citation omitted). What is more, MDOC is an arm of the State and is not a person subject to suit under 42 U.S.C. § 1983. *E.g., Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.*, 948 F.2d 1084, 1086 (8th Cir. 1991).

*v. Lee Cnty.*, 993 F.3d 622, 625 (8th Cir. 2021) (citation omitted). The doctrine protects all but the plainly incompetent or those who knowingly violate the law. *Clayborn v. Struebing*, 734 F.3d 807, 808 (8th Cir. 2013) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Officers are allowed considerable room for mistaken judgments. *Id*. (citing *Borgman v. Kedley*, 646 F.3d 518, 522 (8th Cir. 2011)).

"To overcome [Defendants'] claim of qualified immunity, [Plaintiff] bears the burden of showing that the facts alleged, construed in the light most favorable to [Plaintiff], demonstrate the violation of a constitutional right that was clearly established at the time of the violation." *Church v. Anderson*, 898 F.3d 830, 832 (8th Cir. 2018) (citation and internal quotation marks omitted). It is well established that "deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment." *Langford v. Norris*, 614 F.3d 445, 459 (8th Cir. 2010) (citations omitted). To establish a claim of deliberate indifference to a serious medical need, a plaintiff must show that he suffered from one or more objectively serious medical needs and that prison officials knew of but deliberately disregarded those needs. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019) (citation omitted). An objectively serious medical need is one that is "either obvious to the layperson or supported by medical evidence, like a physician's diagnosis." *Id.* (citation and internal quotation marks omitted). Deliberate indifference may include intentional denial or delay of access to medical care, or intentional interference with treatment or prescribed medication. *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

Plaintiff's allegations, accepted as true for the purposes of this memorandum only, are sufficient to overcome Defendants' claims of qualified immunity at this early stage. The alleged facts show a deprivation of Plaintiff's right to be free from cruel and unusual punishment. Plaintiff alleges in his Fourth Amended Complaint that he had a documented history of seizure activity and

mental health issues. (ECF No. 55, ¶ 14). At the time of the incident, Plaintiff was under close observation for mental health issues and a recent medication change. *Id.* at ¶¶ 14, 15. After threatening to set Plaintiff's "ass on fire," Defendant Gittemeier entered Plaintiff's cell and discharged two cannisters of mace on Plaintiff. *Id.* at ¶¶ 21, 27-32. Plaintiff told Gittemeier he could not see and pleaded for him to stop. *Id.* at ¶¶ 31, 32. Defendant Peeper observed and recorded the incident but made no attempt to intervene. *Id.* at ¶ 33. Plaintiff then hyperventilated and experienced a seizure. *Id.* at 34. He became disoriented, lost consciousness, and fell, injuring his nose and sinus cavities. *Id.* Plaintiff informed Defendant Peeper of his seizure and loss of consciousness, but Peeper declined Plaintiff's request for medical attention. *Id.* at ¶¶ 35-37. These allegations establish that Plaintiff suffered from one or more objectively serious medical needs.

It is unclear from the record whether Gittemeier witnessed Plaintiff's seizure and loss of consciousness. But Gittemeier himself discharged two cannisters of mace on Plaintiff and Plaintiff told Gittemeier that he could not see. *Id.* at ¶¶ 31, 32. Plaintiff then suffered loss of consciousness and injuries to his face. *Id.* at ¶¶ 35-37. Gittemeier nevertheless refused Plaintiff's request for medical attention even though Plaintiff was assigned to a Close Observation Cell for medical reasons *Id.* at ¶ 13, 14, 64, 66. Accepting Plaintiff's allegations as true, the Court finds that Plaintiff states a plausible claim of deliberate indifference against Defendant Gittemeier. *See Tovar v. Essential Health*, 857 F.3d 771, 774 (8th Cir. 2017). Put another way, the facts—viewed in the light most favorable to Plaintiff—demonstrate that Gittemeier violated Plaintiff's clearly established constitutional right to medical care. *Langford*, 614 F.3d at 459. For that reason, the Court will deny Defendants' Motion to Dismiss as to Plaintiff's deliberate indifference claim against Defendant Gittemeier.

6

The allegations also show that Defendant Peeper knew of but disregarded Plaintiff's medical needs. Peeper observed Gittemeier's conduct and Plaintiff informed Peeper of his seizure and loss of consciousness. *Id.* at ¶¶ 35-37. Peeper nevertheless refused Plaintiff's request for medical attention even though Plaintiff was in a Close Observation Cell. *Id.* at ¶ 13, 14, 64, 66. Accepting these allegations as true, the Court finds that Plaintiff states a plausible claim of deliberate indifference against Defendant Peeper. *See Tovar*, 857 F.3d at 774. Viewed in the light most favorable to Plaintiff, the facts plausibly show that Peeper violated Plaintiff's clearly established constitutional right to medical care. *Langford*, 614 F.3d at 459. The Court will deny Defendant's Motion to Dismiss as to Plaintiff's deliberate indifference claim against Defendant Peeper.

### III. Sufficiency of Factual Allegations

#### A. Count I – Excessive Force Against Defendant Gittemeier

Defendant Gittemeier argues that Plaintiff has failed to plead sufficient facts to establish a plausible claim of excessive force. The Court disagrees.

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992); *see also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017); *see also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if

7

they are completely unjustified in using force, i.e., they are using it maliciously and sadistically."). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

In his Fourth Amended Complaint, Plaintiff alleges that Defendant Gittemeier entered his cell and, without warning, discharged two cans of mace at Plaintiff. (ECF No. 55, ¶¶ 27-30). Gittemeier told Plaintiff to remove an obstruction from the cell's camera. *Id.* at ¶ 28. Plaintiff told Gittemeier there was nothing on the camera. *Id.* at ¶ 29. Plaintiff asserts he was complying with commands and not posing a threat to others or himself. *Id.* at ¶¶ 25-30. Shortly before this incident, Defendant Gittemeier threated to "set [Plaintiff's] ass on fire." *Id.* at ¶ 21. The Court must accept these allegations as true. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019) (stating that courts must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the plaintiff). Plaintiff has pled sufficient facts for the Court to reasonably infer that Defendant Gittemeier is liable for the alleged misconduct. *See Perez v. Does 1-10*, 931 F.3d 641, 646 (8th Cir. 2019) (explaining that a "claim has sufficient facial plausibility to survive [a motion to dismiss] where the plaintiff has pled enough facts to allow the Court to reasonably infer that the defendant is liable for the alleged misconduct."). Even if Defendant Gittemeier was trying to establish order, Plaintiff has alleged that Gittemeier used more force than was necessary. Thus, the Court will deny Defendants' Motion to Dismiss as to Plaintiff's excessive force claim against Defendant Gittemeier in his individual capacity.

### B. Count II – Failure to Intervene Against Defendant Peeper

Defendant Peeper argues that Plaintiff has not alleged sufficient facts to sustain his claim for failure to intervene. Again, the Court disagrees.

The Eighth Circuit imposes upon prison officials the obligation to restore control in tumultuous situations. *Buckner v. Hollins*, 983 F.2d 119, 121 (8th Cir. 1993). Thus, under § 1983, a correctional officer can be held liable for failing to intervene in another officer's constitutional violation. *See Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981) (determining that a deputy could be held "jointly liable for failing to intervene if a fellow officer . . . was using excessive force and otherwise was unlawfully punishing the prisoner."); and *Buckner*, 983 F.2d at 121-22 (determining that state corrections officer had a duty to intervene on behalf of an inmate being assaulted by a county corrections officer.). "A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault." *Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994).

Plaintiff alleges that Defendant Peeper was present during Plaintiff's encounter with Defendant Gittemeier but did not intervene or otherwise attempt to end the alleged assault. (ECF No. 55, ¶¶ 33). As noted above, the Court must accept Plaintiff's factual allegations as true. *Jones*, 915 F.3d at 499. Because Plaintiff alleges Peeper failed to intervene during an assault on an inmate, the Court finds Plaintiff states a Section 1983 claim against Peeper under the Eighth Amendment. *See Putman*, 639 F.2d at 423. Thus, the Court will deny Defendants' Motion to Dismiss as to Plaintiff's failure-to-intervene claim against Defendant Peeper in his individual capacity.

### C. Plaintiff's State-Law Claims[5]

Defendants argue that Plaintiff has not pleaded sufficient facts to sustain his state-law claims of battery, assault, intentional infliction of distress, and civil conspiracy. Defendants are partially correct.[6]

---

[5] Under 28 U.S.C. § 1367, a federal district court may exercise supplemental jurisdiction over state-law claims that the court would not otherwise have subject matter jurisdiction to hear, if the claims are part of the same case or controversy as the claims over which the court has original jurisdiction.

9

### i. Count IV – Assault Claim Against Defendants Gittemeier and Peeper

In Count IV, Plaintiff brings an assault claim against Defendants Gittemeier and Peeper based on the incident described above. Defendants argue that Plaintiff cannot establish the element of intent. But Plaintiff's factual allegations, accepted as true, are sufficient to establish a plausible claim of assault against Defendant Gittemeier.

To plead civil assault under Missouri law, a plaintiff must allege: (1) the defendant's intent to cause bodily harm or offensive contact, or apprehension of either; (2) conduct of the defendant indicating such intent, and (3) apprehension of bodily harm or offensive contact on the part of the plaintiff caused by the defendant's conduct. *Devitre v. Orthopedic Ctr. of St. Louis, LLC*, 349 S.W.3d 327, 335 (Mo. banc 2011) (citation omitted).

Defendants correctly note that Plaintiff's Count IV contains few facts. But the preceding portions of Plaintiff's Fourth Amended Complaint, which Plaintiff incorporates into Count IV, supplement Plaintiff's assault claim. Plaintiff alleges that Defendant Gittemeier threated to "set [his] ass on fire" and subsequently discharged two cans of mace on him. (ECF No. 55, ¶¶ 13-40). Plaintiff further alleges that Defendant Peeper watched and recorded the incident. (ECF No. 55, ¶¶ 33). These allegations are sufficient to support a claim of assault against Defendant Gittemeier in his individual capacity. They are not, however, sufficient to support such a claim against Defendant Peeper. Although Peeper's alleged failure to act does not form the basis of a plausible claim of assault. The Court will dismiss Count IV against Defendant Peeper only.

### ii. Count V – Battery Claim Against Defendant Gittemeier

In Count V, Plaintiff alleges Defendant Gittemeier committed civil battery when he sprayed Plaintiff with mace. Defendants again argue that Plaintiff cannot establish the element of

intent. As with the assault claim against Defendant Gittemeier, Plaintiff's factual allegations, accepted as true, are sufficient to support a claim of battery.

Under Missouri law, civil battery is defined as "intended, offensive bodily contact with another person." *Devitre*, 349 S.W.3d at 334. Plaintiff states that Defendant Gittemeier threated to "set [his] ass on fire" and subsequently discharged two cans of mace on him for allegedly no justifiable reason. (ECF No. 55, ¶¶ 13-40). Contrary to Defendant Gittemeier's argument, Plaintiff's allegations show intent to cause offensive bodily contact and not merely to gain compliance. The Court denies the Motion to Dismiss as to Count V against Defendant Gittemeier in his individual capacity.

### iii. Count VI – Intentional Infliction of Emotion Distress Claim Against Defendants Gittemeier and Peeper

In Count VI, Plaintiff alleges intentional infliction of emotional distress by Defendants Gittemeier and Peeper. Defendants assert that Plaintiff's claim is no more than a bare recitation of the elements. While the Court disagrees with Defendants, it will dismiss Count VI for the reason below.

Under Missouri law, to establish a claim of intentional infliction of emotional distress, a plaintiff must show: (1) the defendant's conduct was extreme and outrageous; (2) the defendant acted intentionally or recklessly; and (3) the defendant's conduct caused extreme emotional distress resulting in bodily harm. *Gillis v. Principia Corp.*, 111 F. Supp. 3d 978, 986 (E.D. Mo. 2015), *aff'd*, 832 F.3d 865 (8th Cir. 2016). There is no independent action for intentional infliction of emotional distress where the existence of the claim is dependent upon a battery. *K.G. v. R.T.R.*, 918 S.W.2d 795, 800 (Mo. banc 1996).

Plaintiff's allegations, accepted as true, satisfy the elements of intentional infliction of emotion distress against Defendants Gittemeier and Peeper. Plaintiff's claim, however, is entirely

11

dependent upon the commission of other traditional torts. Plaintiff does not allege that the conduct was intended only to cause extreme emotional distress. Thus, a claim of intentional emotional distress will not lie. *K.G.*, 918 S.W.2d at 799 ("Where a defendant's conduct amounts to the commission of one of the traditional torts, such as battery, and the conduct was not intended only to cause extreme emotional distress to the victim, the tort of intentional emotional distress will not lie, and recovery must be had under the appropriate traditional common law action."). The rationale for this rule is that intentional infliction of emotional distress "was intended to supplement existing forms of recovery, not swallow them." *Id*. The Court will dismiss Count VI entirely.

### iv. Count IX – Civil Conspiracy Claim Against All Defendants

Lastly, in Count IX, Plaintiff alleges that Defendants engaged in a civil conspiracy to commit unlawful conduct. Defendants assert that Plaintiff fails to allege sufficient facts to show a "meeting of the minds." The Court agrees.

In Missouri, a claim for civil conspiracy is not a separate and distinct cause of action but acts to hold conspirators jointly and severally liable for some underlying act. *Higgins v. Ferrari*, 474 S.W.3d 630, 642 (Mo. Ct. App. 2015) (citing *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. 2012)). To state a claim for civil conspiracy, a plaintiff must establish: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) the plaintiff was thereby injured. *Id.* (citing *Mika v. Cent. Bank of Kansas City*, 112 S.W.3d 82, 93 (Mo. Ct. App. 2003) (internal quotation marks omitted)).

Plaintiff's Count IX contains few facts. And unlike Plaintiff's battery and assault claims, it is not saved by factual allegations contained in other parts of the Fourth Amended Complaint.

Plaintiff merely states that "the Defendants . . . acted in concert to commit an unlawful act" and "arrived at a conspiratorial agreement through a meeting of the minds[.]" (ECF No. 55, ¶¶ 117, 120). Plaintiff's allegations amount to legal conclusions that this Court need not accept as true. *Iqbal*, 556 U.S. at 678. The Court will dismiss Count IX.

### D.  *Monell* Claims Against MDOC, Minor, and Weber

In Count VII, Plaintiff argues that his mistreatment was "a consequence of express and widespread policies, procedures, protocols, customs and/or practices employed by Defendant MDOC, and approved of and used by Defendant Minor and Defendant Weber[.]" (ECF No. 55, ¶ 90). In Count VIII, Plaintiff alleges a failure to hire, train, supervise, and discipline prison personnel by Defendants MDOC, Minor, and Weber. (ECF No. 55, ¶¶ 103-115).

An individual can sue a local governing body under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Liability may attach under *Monell* if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). But Plaintiff may not bring a *Monell* claim against Defendant MDOC or Defendants Minor and Weber in their official capacities because *Monell* only applies to municipalities and local governments. *Judah v. Ovsak*, No. 21-CV-618 (ECT/LIB), 2021 WL 3146469, at *7 (D. Minn. July 26, 2021) (stating that the plaintiff could not bring a *Monell* claim against the state); *see also Joseph v. Bd. of Regents of Univ. of Wis. Sys.,* 432 F.3d 746, 748-40 (7th Cir. 2005) ("The Court has been clear, however, that *Monell's* holding applies only to municipalities and not states or states' departments."). Thus, the Court will dismiss Counts VII and VIII against Defendant MDOC and Defendants Minor and Weber in their official capacities.

That alone, however, does not end the inquiry. Plaintiff also sues Defendants Minor and Weber in their individual capacities. Although respondeat superior does not apply to § 1983 cases, a state supervisory official may be liable in his individual capacity if "either his direct action or his failure to properly supervise and train the offending employee caused the constitutional violation." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (citation and internal quotation marks omitted). Even if a supervisor is not involved in day-to-day operations, he may be liable if he is involved in "creating, applying, or interpreting a policy that gives rise to unconstitutional conditions." *Id.* (citation and internal quotation marks omitted). It is well established in the Eighth Circuit, however, that a warden's general supervisory authority over prison operations does not automatically make him liable under § 1983. *Id.* at 545 (citation and quotations omitted). Plaintiff must show that Defendants Minor and Weber were directly involved in "making, implementing, or enforcing a policy decision that created unconstitutional conditions." *Id.* (citation and quotations omitted).

Here, Plaintiff alleges that Defendants Minor and Weber approved "express and widespread policies, procedures, protocols, customs and/or practices . . . that allow, among other things, the use of unreasonable force on inmates and refusal of medical attention to inmates." (ECF No. 55, ¶ 90). Plaintiff further alleges that Defendants Minor and Weber failed to hire, train, supervise, and discipline prison personnel in a manner that prevents unconstitutional treatment. *Id.* at ¶¶ 105-115.

Plaintiff's allegations relating to Defendants Minor and Weber amount to legal conclusions that this Court need not accept as true for the purposes of this analysis. *Iqbal*, 556 U.S. at 678. Plaintiff must plead facts that plausibly show direct involvement by Defendants Minor and Weber in the formation, implementation, or enforcement of the alleged policies and procedures. *Jackson*,

747 F.3d at 543. Plaintiff has not done so. At this stage in the litigation, Plaintiff has shown no affirmative link between the incident in question and the actions of Defendants Minor and Weber. While Plaintiff makes broad allusions to policies and procedures that condone cruel and unusual punishment, he identifies only one specific incident of such punishment—that allegedly committed by Defendants Gittemeier and Peeper. Without more, Plaintiff's allegations do not plausibly show direct involvement by Defendants Minor and Weber and their general supervisory authority alone is not enough to establish liability. *Id.* at 545. The Court will dismiss Counts VII and VIII against them.[7]

## CONCLUSION

For the reasons set forth above, the Court will dismiss Counts VI, VII, VIII, and IX, and Defendants MDOC, Weber, and Minor. The Court will further dismiss all claims against Defendants Pearson and Gittemeier in their official capacities. The Court will deny Defendants' Motion to Dismiss as Counts I, III, IV, and V against Gittemeier in his individual capacity. The Court will also deny Plaintiff's Motion as to Counts II and III against Peeper in his individual capacity.

---

[7] In his Memorandum in Opposition, Plaintiff requests an opportunity to amend his Fourth Amended Complaint if the Court finds he failed to state a claim against Defendants MDOC, Weber, and Minor. "The Eighth Circuit has repeatedly held that district courts do not abuse their discretion in denying leave to amend where the plaintiff did not file a motion for leave to amend and submit a proposed amended complaint, and merely asked for leave to amend in its response to a motion to dismiss." *Tracy v. SSM Cardinal Glennon Children's Hosp.*, No. 4:15-CV-1513 CAS, 2016 WL 3683000, at *16 (E.D. Mo. July 12, 2016) (citing *Geier v. Missouri Ethics Comm'n*, 715 F.3d 674, 678 n.4 (8th Cir. 2013); *Minneapolis Firefighters' Relief Ass'n v. MEMC Electronic Materials, Inc.*, 641 F.3d 1023, 1030 (8th Cir. 2011); *In re 2007 Novastar Financial, Inc., Secs. Litig.*, 579 F.3d 878, 884–85 (8th Cir. 2009); *Clayton v. White Hall Sch. Dist.*, 778 F.2d 457, 460 (8th Cir. 1985)). The Court will deny Plaintiff's request.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Frank Gittemeier, Charles Peeper, Dean Minor, Scott Weber, and the Missouri Department of Corrections' Motion to Dismiss Plaintiff Jeremy Pearson's Fourth Amended Complaint (ECF No. 61) is **GRANTED in part** and **DENIED in part**. The Motion is:

> **GRANTED** as to Defendants Missouri Department of Corrections, Dean Minor, and Scott Weber;
>
> **GRANTED** as to Counts VI, VII, VIII, and IX;
>
> **GRANTED** as to Defendants Frank Gittemeier and Charles Peeper in their official capacities;
>
> **GRANTED** as to Count IV against Defendant Charles Peeper;
>
> **DENIED** as to Counts I, III, IV, and V against Defendant Frank Gittemeier in his individual capacity; and
>
> **DENIED** as to Counts II and III against Defendant Charles Peeper in his individual capacity.

Counts I, III, IV, and V remain against Defendant Frank Gittemeier in his individual capacity only. Counts II and III remain against Defendant Charles Peeper in his individual capacity only.

An appropriate Order of Dismissal will accompany this Memorandum and Order.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 31st day of January, 2022.