**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| JEREMY BRADLEY PEARSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-CV-41 RLW |
| | ) | |
| FRANK GITTEMEIER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on Defendants Frank Gittemeier and Charles Peeper's Motion for Summary Judgment. (ECF No. 109). Plaintiff Jeremy Pearson opposes the motion. (ECF No. 128). It is fully briefed and ready for disposition. For the following reasons, the Court grants Defendants' Motion for Summary Judgment in its entirety.

**Background**

Plaintiff is an inmate under the custody of the Missouri Department of Corrections. ("MDOC"). (ECF No. 127 at ¶ 1). This action arises from a use-of-force incident that occurred when Plaintiff was an inmate at Moberly Correctional Center ("MCC") in Moberly, Missouri. (ECF No. 55).[1] Five counts and two defendants remain: Count I against Gittemeier for excessive use of force; Count II against Peeper for failure to intervene; Count III against Gittemeier and Peeper for deliberate indifference to Plaintiff's serious medical need; Count IV against Gittemeier

---

[1] Plaintiff's Fourth Amended Complaint contains nine counts against five defendants arising under 42 U.S.C. § 1983 and state law. (ECF No. 55). The Court previously dismissed Counts VI, VII, VIII, and IX, and Defendants MDOC, Scott Weber, and Dean Minor. (ECF No. 89). The Court also dismissed all claims against Defendants Frank Gittemeier and Charles Peeper in their individual capacities. *Id.*

for assault; and Count V against Gittemeier for battery. *Id.* For the reasons below, the Court will grant Defendants' Motion for Summary Judgment in its entirety.

## Legal Standard

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "The nonmoving party may not rely on allegations or denials" but rather "must substantiate [his] allegations with sufficient probative evidence that would permit a finding in [his] favor on more than mere speculation or conjecture." *Carter v. Pulaski Cnty. Special Sch. Dist.*, 956 F.3d 1055, 1059 (8th Cir. 2020) (quoting *Ball v. City of Lincoln, Neb.*, 870 F.3d 722, 727 (8th Cir. 2017)). "Small factual disputes about the underlying events . . . could only create the 'metaphysical' kind of doubt that the Supreme Court decried in *Matsushita Electric Industrial Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)." *Main v. Ozark Health, Inc.*, 959 F.3d 319, 327 (8th Cir. 2020) (cited case omitted).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000)).

## Facts

Defendant Frank Gittemeier was a captain and Defendant Charles Peeper was a sergeant when Plaintiff was incarcerated at MCC. *Id.* at ¶¶ 6-10. On January 13, 2019, Plaintiff was under close observation in a private cell due to "extreme suicidal thoughts." *Id.* at ¶¶ 13-16; Def. Ex. E; ECF No. 127 at p. 12; Pl. Ex. 1 at ¶ 3). Plaintiff claims Defendant Gittemeier came to his cell that day and stated, "I've heard your name over the radio numerous times over the last three days, if I hear your name one more time, I'm gonna set your ass on fire." (ECF No. 55 at ¶ 21). Gittemeier disputes this claim. (Pl. Ex. 3, 71:13-21). It is undisputed, however, that Defendant Peeper told Plaintiff at some point on January 13, 2019, to remove an unidentified object from the camera in his cell. (ECF. No. 111 at ¶ 8; Def. Ex. A). Peeper gave Plaintiff a final warning: "This is the last time I'm going to tell you, then I'm going to spray you." (Def. Ex. A). Plaintiff told Peeper he had

no right to spray him. *Id.* Peeper responded, "I can. It's a security issue." *Id.* After more arguing, Peeper stated, "Cool. I'll be back." *Id.*[2]

Sometime later, Plaintiff requested and received a piece of tissue paper from another officer.[3] *Id.* at ¶ 23; (ECF No. 55 at ¶ 22-23). Plaintiff used the tissue paper to cover the light in his cell so he could sleep. *Id.* Around 9:20 p.m., Peeper visited Plaintiff's cell and told Plaintiff to remove an unidentified object from the camera. (Pl. Ex. 1 at ¶ 9). Shortly thereafter, Gittemeier arrived at Plaintiff's darkened cell and discharged pepper spray towards Plaintiff for about four to six seconds. (Def. Ex. B; Def. Ex. C).[4] Gittemeier then instructed Plaintiff to "uncover the camera" and asked Peeper for his spray cannister. (Def. Ex. B). Gittemeier again told Plaintiff to uncover the camera. *Id.* Plaintiff yelled, "The camera ain't covered." *Id.* Gittemeier then asked, "Why is it dark?" *Id.* Plaintiff responded that he had covered the light. *Id.* Gittemeier told Plaintiff to uncover the light four additional times before Plaintiff complied. *Id.* Gittemeier then instructed Peeper to "get a nurse down here." *Id.* Peeper radioed for the nurse. *Id.*

After calling for a nurse, Gittemeier told Plaintiff to kick his items out of his cell. *Id.* Plaintiff responded, "Man, fuck you, get it." *Id.* Gittemeier again instructed Plaintiff to "kick that stuff out" and warned Plaintiff he would spray Plaintiff again. *Id.* Plaintiff responded that he could

---

[2] Plaintiff claims he was not warned before being sprayed. (ECF No. 128 at p. 13). For that to be true, the events in Defendant's Exhibit B (video of Plaintiff being sprayed) would necessarily have to precede the events in Defendant's Exhibit A (video of Plaintiff being warned). There is no evidence to suggest that Peeper's warning in Exhibit A came after Gittemeier deployed the pepper spray in Exhibit B.

[3] Defendants contend that Plaintiff used a wet piece of toilet paper to cover the light. (ECF No. 111 at ¶ 9). The specific material used is irrelevant. It is undisputed that Plaintiff covered the light in his cell.

[4] The parties dispute the length of the spray. Plaintiff claims Gittemeier sprayed him for six to eight seconds. (ECF No. 128 at pp. 6-7). Defendants claim Gittemeier sprayed for two to three seconds. Having reviewed the video evidence, the Court believes Gittemeier sprayed Plaintiff for four to six seconds.

not comply because he could not see. *Id.* Gittemeier stated, "It's on the floor. Kick it over." Plaintiff again stated he could not see and Gittemeier again warned Plaintiff. *Id.* Gittemeier then gave Plaintiff a "last warning" as Plaintiff protested due to his inability to see. *Id.* Gittemeier sprayed Plaintiff again for approximately two seconds. *Id.* Gittemeier then stated, "Start kicking that stuff out and we'll get your nurse down here." *Id.* Plaintiff reiterated that he could not see. *Id.* In response, Gittemeier stated, "You can feel it. It's right there by your feet." *Id.* Plaintiff seemingly tried to comply because Gittemeier stated, "There you go. Kick it a little more." *Id.* Gittemeier then told Plaintiff, "You're kicking it away from me." *Id.* Plaintiff and Gittemeier continued their exchange before Gittemeier walked off-screen for approximately 22 seconds. *Id.* Gittemeier then returned and asked Plaintiff, "Want me to cuff you in the front?" and told Plaintiff to "kick that stuff over." *Id.* Plaintiff again explained he could not see. *Id.* Gittemeier responded, "Here's what's going to happen. I'm going to get a five-man team and you're going to get cuffed from the back." *Id.* Plaintiff and Gittemeier continued to argue and Gittemeier gave Plaintiff a "last chance." *Id.* Gittemeier then walked away from Plaintiff's cell and Plaintiff kicked items toward the door. *Id.* An unidentified officer radioed, "He kicked that stuff to the door" and Gittemeier returned. *Id.* Gittemeier told Plaintiff to "throw that stuff [unintelligible] the sink out here." *Id.* Plaintiff responded, "I can't get to the door [unintelligible], fuck you man." *Id.* Gittemeier closed the cell door and again walked away from Plaintiff's cell. *Id.* Gittemeier returned after nearly three minutes and asked Plaintiff, "You ready to give up the toilet paper, or washcloth, or whatever it is you had?" *Id.* Plaintiff responded, "Fuck you, man! You knew I didn't have the camera covered up." Gittemeier stated, "We could not see in there." *Id.* The two continued their exchange and Plaintiff began yelling that he did not cover the camera. *Id.* Gittemeier then instructed someone off camera

to "get the nurse down here. She can see him or not." *Id.* Gittemeier stated something unintelligible, to which Plaintiff responded, "I didn't cover the camera up, bitch!" *Id.*

After a brief cessation in their back-and-forth, Gittemeier asked Plaintiff, "Do you want to see the nurse?" *Id.* Plaintiff exclaimed, "What the fuck you think, man? You retarded?" *Id.* Gittemeier clarified, "Yes or no?" *Id.* Plaintiff said, "Yeah." *Id.* Plaintiff then stated he would not move away from the cold water in the cell sink. *Id.* "Then that's a refusal," said Gittemeier. *Id.* Plaintiff responded, "No it ain't. I'm not moving away." *Id.* Gittemeier then turned away from Plaintiff and told an unidentified individual—likely the nurse—"He refuses to see you."[5] *Id.* Plaintiff yelled, "No it ain't. I'm not refusing the nurse." *Id.* Gittemeier closed the cell door. *Id.*

Plaintiff contends he "hyperventilated and experienced seizure activity" after the attack. (ECF No. 55 at ¶ 34). He asserts that he lost consciousness, fell, and injured his nose and sinus cavities. *Id.* Plaintiff does not state how much time passed before he lost consciousness. Based on review of the video evidence, Plaintiff was able to wash his eyes in the sink and remained conscious for at least eight minutes after the initial spray. (Def. Exs. B, C). Plaintiff was still alert when Gittemeier closed the cell door. (Def. Exs. B, C; Pl. Ex. 1 at ¶ 15). Plaintiff asserts he informed Peeper of the incident and requested medical treatment, to which Peeper allegedly responded, "Well I didn't see it, so you're beat." (Pl. Ex. 1, ¶ 15). Plaintiff asserts he again requested medical care at 10:30 p.m. but was denied. *Id.* at ¶ 16. Plaintiff further claims he reported the injury to prison personnel many times after he was released from suicide watch. *Id.* at ¶ 17.

---

[5] According to Defendants, one can see Nurse Rebecca Smith approaching Plaintiff's cell in Exhibit D. (Def. Ex. D; ECF No. 111 at ¶ 37). Plaintiff does not meaningfully dispute this contention.

## Discussion

### I.    Qualified Immunity Standard

Defendants assert they are entitled to qualified immunity for all claims brought under 42 U.S.C. § 1983. (ECF No. 110 at pp. 5, 8). The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" *Stark v. Lee Cnty.*, 993 F.3d 622, 625 (8th Cir. 2021) (citation omitted). The doctrine protects all but the plainly incompetent or those who knowingly violate the law. *Clayborn v. Struebing*, 734 F.3d 807, 808 (8th Cir. 2013) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Officers are allowed considerable room for mistaken judgments. *Id*. (citing *Borgman v. Kedley*, 646 F.3d 518, 522 (8th Cir. 2011)).

"To overcome [Defendants'] claim of qualified immunity, [Plaintiff] bears the burden of showing that the facts alleged, construed in the light most favorable to [Plaintiff], demonstrate the violation of a constitutional right that was clearly established at the time of the violation." *Church v. Anderson*, 898 F.3d 830, 832 (8th Cir. 2018) (citation and internal quotation marks omitted).

### II.    Plaintiff's Excessive Force Claim Against Defendant Gittemeier (Count I)

Plaintiff claims that Gittemeier used excessive force in violation of the Eighth Amendment. (ECF No. 55 at ¶¶ 41-47). Gittemeier argues that he is entitled to qualified immunity. (ECF No. 110 at p. 5). The Court agrees with Defendant Gittemeier.

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992); *see also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017); *see also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, *i.e.*, they are using it maliciously and sadistically."). Prison officials are liable "only if they are completely unjustified in using force[.]" *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

The Eighth Circuit's opinion in *Burns v. Eaton* supports a finding that Gittemeier is entitled to qualified immunity. *See Burns*, 752 F.3d 1136. In *Burns*, prison officials took Burns to a shower cell to wash off some topical medication. *Id.* at 1138. When Burns finished his shower, Sergeant Eaton instructed Burns to turn around so Eaton could handcuff Burns and return him to his cell. *Id.* Burns refused. *Id.* Eaton repeated his instructions and Burns again refused. *Id.* Eaton then brandished his pepper spray and told Burns, "If you do not catch the cuffs to go back to your cell, I'll spray you." *Id.* Burns attempted to change the subject, but Eaton again warned Burns. *Id.* Burns then threw a shampoo bottle at Eaton and Eaton sprayed Burns for approximately two to three

8

seconds. *Id.* Burns then threw a soap dish at Eaton and Eaton sprayed Burns again. *Id.* Burns then spit at Eaton, resulting in a final spray. *Id.*

The district court found Eaton was entitled to qualified immunity and granted his motion for summary judgment. *Id.* at 1138-39. The Eighth Circuit affirmed, explaining that Eaton faced a recalcitrant inmate and could not simply leave Burns in the shower cell. *Id.* "Either Burns must be persuaded to comply with the command to return to his cell, or someone must enter the shower cell and forcibly remove him." *Id.* at 1139. The court noted that the use of a limited amount of pepper spray to control an unmanageable inmate constituted a tempered response when compared to other forms of force. *Id.* at 1139-40 (citing *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000)). Distinguishing *Burns* from the few cases involving pepper spray where it had denied summary judgment, the Eighth Circuit explained that those cases involved "super-soaker quantities" of the chemical, refusal to allow the victim to wash off the chemical for days, and/or the use of additional physical force. *Id.* The Eighth Circuit concluded, "This is not a case where a complete absence of a penological purpose raised the reasonable inference that the officers acted maliciously in an effort to cause harm." *Id.* (citing *Williams v. Jackson*, 600 F.3d 1007, 1014 (8th Cir. 2010)) (internal quotation marks omitted).

Here, Peeper explicitly told Plaintiff that if Plaintiff did not uncover the camera he would be sprayed. (Pl. Ex. 2, 42:1-11; Def. Ex. A). While Gittemeier himself did not warn Plaintiff before deploying the pepper spray, Gittemeier was aware that Peeper had already issued the warning. (Pl. Ex. 3 at 48:3-24, 52:1-8, 53:7-13, 143:16-25). Despite Plaintiff's arguments to the contrary, the fact that the camera was not covered at that exact moment does not change the analysis. *See Borgman*, 646 F.3d at 522 ("Immunity allows corrections officers to make reasonable errors."). Defendants reasonably believed Plaintiff had tampered with the camera. (Pl. Ex. 2 at 35:11-17,

41:19-42:11, 42:12-43:10, 45:10-19, 109:17-20; Pl. Ex. 3 at 48:3-24, 50:8-12, 53:7-13, 58:15-18, 92:21-94.4, 116:6-10). By ordering Plaintiff to uncover the camera, Peeper put Plaintiff on notice that he needed a clear view of the cell—a reasonable request because Plaintiff was under close observation for "extreme suicidal thoughts." *Id.* Put another way, Defendants faced a uncooperative inmate and could not simply allow Plaintiff to obscure the camera feed, whether by covering the camera or covering the light. *See Burns*, 752 F.3d 1138-39. Gittemeier also warned Plaintiff before spraying him the second time for failing to "kick out" the items in the cell. (Def. Ex. B). Gittemeier testified at his deposition that he needed the items from Plaintiff's cell because he "didn't know what [Plaintiff] had in there" or "what [Plaintiff] was capable of." (Pl. Ex. 3 at 133:15-19). There is no evidence that Gittemeier used pepper spray merely to cause pain.[6] Gittemeier was not "completely unjustified" in his use of force. *See Irving*, 519 F.3d at 446.

Further, Gittemeier did not use "super-soaker" amounts of the chemical. While the parties dispute the length of the burst, the exact number of seconds is immaterial. The video evidence shows that Gittemeier's first burst lasted approximately four to six seconds. (Def. Ex. B; Def. Ex. C). Even if the burst lasted a full six seconds, Plaintiff cites no authority that six seconds constitutes an unreasonable amount. In fact, Peeper testified at his deposition that the standard spray can last up to six seconds. (Pl. Ex. 2 at 60:9-18).

What is more, Plaintiff had immediate access to cold water in his cell. (Def. Ex. B; Def. Ex. C). Plaintiff found enough relief from the cold water that he refused to move away from the

---

[6] Plaintiff claims Gittemeier threatened to "set [his] ass on fire" if Gittemeier heard Plaintiff's name "come over the radio" one more time. (ECF No. 127-1 at ¶ 5). There is nothing beyond Plaintiff's own affidavit to support this contention. Even if true, Plaintiff's assertion does not negate the fact that Gittemeier's use of force was not completely unjustified.

sink. *Id.* And although Plaintiff did not see the nurse—an issue discussed below in Section IV—Gittemeier did not use additional physical force to gain compliance.[7]

Likewise, the Eighth Circuit's opinion in *Jones v. Shields* further supports a finding that Gittemeier is entitled to qualified immunity. *See Jones*, 207 F.3d at 492. In that case, Officer Jones ordered Shields to the hall desk. *Id.* Shields proceeded to the desk and gave Jones his name and prisoner number. *Id.* Jones then ordered Shields to his barracks. *Id.* at 493. As Shields walked away, Jones asked, "Inmate Shields, what barracks you out of?" *Id.* Shields told him and continued walking. *Id.* Jones then repeated the question. *Id.* When Shields turned to respond, Jones sprayed him with pepper spray. *Id.* According to Jones, Shields "got very loud and became argumentative" and Jones deployed pepper spray as a result. *Id.* Officer Spencer immediately pushed Shields against the wall and placed him in handcuffs. *Id.* According to Spencer, Shields "charged toward" Jones. *Id.* Shields alleged he remained against the wall for 10 to 20 minutes before Spencer took him to the nurse. *Id.* Spencer claimed he took Shields to the nurse immediately. *Id.*

The district court denied defendant Jones's motion for judgment as a matter of law. The Eighth Circuit reversed:

> Viewing the evidence in Shields' favor, we conclude Jones' administration of capstun in this prison setting resulted in de minimis injury for Eighth Amendment purposes. Despite somewhat elaborate claims of pain, Shields' own testimony reveals the effects of the capstun cleared within 45 minutes; he was twice taken to the infirmary and treated with water during that period, and; a medical examination the day after the incident revealed no lingering effects.

*Id.* at 495. The Eighth Circuit explained that summary applications of force are constitutionally permissible when prison security and order are in jeopardy. *Id.* (cleaned up). The Eighth Circuit

---

[7] Plaintiff argues that Defendants' reliance on *Burns* is misplaced because Plaintiff can identify affirmative evidence that proves Gittemeier's motive for using force was malicious and sadistic. Plaintiff cites no such evidence.

explicitly noted that the use of chemical agents does not constitute cruel and unusual punishment when reasonably necessary to subdue a recalcitrant prisoner. *Id.* (cleaned up). Use of pepper spray to control an uncooperative inmate "should rarely be a proper basis for judicial oversight." *Id.* (cleaned up).

Like the plaintiff in *Jones*, Plaintiff placed prison security and order in jeopardy by obscuring Defendants' view of his room while on suicide watch. (Def. Ex. B; Def. Ex. C; Pl. Ex. 2 at 35:11-17, 41:19-42:11, 42:12-43:10, 45:10-19, 109:17-20; Pl. Ex. 3 at 48:3-24, 50:8-12, 53:7-13, 58:15-18, 92:21-94.4, 116:6-10). Plaintiff also argued with Peeper before Gittemeier used pepper spray. (Def. Ex. A). Although Plaintiff here was secured in his cell (Def. Ex. B), the logic in *Jones* applies in this instance. The use of chemical agents "does not constitute cruel and unusual punishment when reasonably necessary to subdue a recalcitrant prisoner, *even where the prisoner is locked in his cell or in handcuffs*." *Id.* (cleaned up) (emphasis added).

The cases cited by Plaintiff are inapposite to the facts here. (ECF No. 128, pp. 12-13). In *Walker v. Bowersox*, the Eighth Circuit reversed the district court's grant of summary judgment to a corrections officer who used pepper spray against Walker when he refused to hand over his food tray. *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008). The Eighth Circuit explained that the officer gave no warning and used an amount of pepper spray usually reserved for riot situations. *Id.* at 1198. The Eighth Circuit emphasized that Walker was not allowed to shower or have clean clothes or bedding for three days. *Id.*

The present case is distinguishable. Here, as explained above, Peeper warned Plaintiff before the first spray and Gittemeier warned Plaintiff before the second. (Def. Ex. A; Def. Ex. B). Further, there is no evidence that Gittemeier used an excessive amount of pepper spray or forced

Plaintiff to use contaminated clothing and bedding. In fact, the footage in Defendants' Exhibit B shows Gittemeier providing either a new gown or blanket for Plaintiff. (Def. Ex. B).

Plaintiff's reliance on *Foulk v. Charrier* is also misplaced. (ECF No. 128 at p. 13). In that case, defendant Charrier woke inmate Foulk and ordered him to stand spread eagle against the wall. *Foulk v. Charrier*, 262 F.3d 687, 692 (8th Cir. 2001). When Foulk complied, Charrier sprayed Foulk on the side of the face with pepper spray. *Id.* Charrier then left the room and locked the door behind him. *Id.* When Foulk asked who had sprayed him, Charrier told Foulk to approach the door to "get a good look at his name tag through the screened window in the door." *Id.* When Foulk did so, Charrier sprayed Foulk directly in the face. *Id.* Foulk was not offered medical assistance and was placed in solitary confinement without running water or paper towels. *Id.* He was not allowed to shower. *Id.* A jury found in Foulk's favor and Charrier appealed. *Id.* at 693. The Eighth Circuit affirmed judgment as to Charrier's liability. *Id.* at 701-02.

The present case is unlike *Foulk* in several important ways. *First*, Foulk testified that he complied with Charrier's orders. *Id.* at 701. Here, although Plaintiff argues he was compliant, the evidence shows otherwise. Peeper ordered Plaintiff to uncover the camera in his cell (Def. Ex. A), thereby putting Plaintiff on notice that prison officials needed an unfettered view of the cell. Even so, Plaintiff later decided to cover the light in his cell. (Pl. Ex. 1 at ¶ 6). *Second*, Plaintiff had access to running water. (Pl. Ex. 1 at ¶ 13; Def. Ex. B; Def. Ex. C). Plaintiff does not claim he was prohibited from showering. *Third,* and perhaps most importantly, Gittemeier did not entice Plaintiff to the front of the cell to spray him directly in the face without any penological purpose.

In sum, "[t]his is not a case where a complete absence of a penological purpose raised the reasonable inference that the officers acted maliciously in an effort to cause harm." *See Burns*, 752 F.3d at 1140 (citing *Williams v. Jackson*, 600 F.3d 1007, 1014 (8th Cir. 2010) (internal quotation

13

marks omitted). The mere existence of some alleged factual dispute is not enough to survive a motion for summary judgment. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. At this stage, Plaintiff cannot rely on allegations or denials—he must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor. *Carter*, 956 F.3d at 1059. Drawing all justifiable inferences in Plaintiff's favor, the Court finds Plaintiff has not done so. *See Celotex Corp.*, 477 U.S. at 331.

For the foregoing reasons, the Court finds that Gittemeier did not subject Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment. Thus, Gittemeier is entitled to qualified immunity and the Court will grant Defendants' Motion for Summary Judgment as to Plaintiff's claim of excessive force against Defendant Gittemeier.

### III.   Plaintiff's Failure-to-Intervene Claim Against Defendant Peeper

Plaintiff asserts that Defendant Peeper violated his Eighth Amendment right to be free from cruel and unusual punishment when Peeper failed to intervene with Gittemeier's use of force. (ECF No. 55 at p. 8). The Court disagrees.

The Eighth Circuit imposes upon prison officials the obligation to restore control in tumultuous situations. *Buckner v. Hollins*, 983 F.2d 119, 121 (8th Cir. 1993). Thus, under § 1983, a correctional officer can be held liable for failing to intervene in another officer's constitutional violation. *See Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981). But because Gittemeier did not violate Plaintiff's constitutional rights, there was no constitutional violation with which Peeper could intervene. *See Zubrod v. Hoch*, 907 F.3d 568, 580 (8th Cir. 2018) ("[A] failure-to-intervene claim may not prevail in the absence of a showing of excessive force[.]") (citation omitted). Thus, Plaintiff's claim against Peeper must fail and the Court will grant Defendants' Motion for Summary Judgment as to Plaintiff's failure-to-intervene claim against Defendant Peeper.

**IV.   Plaintiff's Claim of Deliberate Indifference to a Serious Medical Need Against Defendants Gittemeier and Peeper**

Plaintiff claims that Peeper and Gittemeier were deliberately indifferent to his serious medical need following the incident described above. (ECF No. 55 at ¶¶ 57-68). Plaintiff alleges that Defendants denied his requests for medical attention immediately after the incident and again after Plaintiff suffered a seizure and injured his nose. *Id.* Defendants argue there is insufficient evidence to support Plaintiff's claim and that they are entitled to qualified immunity. (ECF No. 110 at p. 11). The Court agrees.

It is well established that "deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment." *Langford v. Norris*, 614 F.3d 445, 459 (8th Cir. 2010) (citations omitted). To establish a claim of deliberate indifference to a serious medical need, a plaintiff must show that he suffered from one or more objectively serious medical needs and that prison officials knew of but deliberately disregarded those needs. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019) (citation omitted). An objectively serious medical need is one that is "either obvious to the layperson or supported by medical evidence, like a physician's diagnosis." *Id.* (citation and internal quotation marks omitted). A prisoner "must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citation omitted). Deliberate indifference may include intentional denial or delay of access to medical care, or intentional interference with treatment or prescribed medication. *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

The Eighth Circuit's decision in *Martz v. Barnes* supports a finding that Defendants are entitled to qualified immunity. In that case, plaintiff Martz sued several prison officials after

defendant Randall accidentally pepper sprayed Martz while targeting Martz's cellmate. *Martz v. Barnes*, 787 F. App'x 356, 357 (8th Cir. 2019). Martz vomited and experienced shortness of breath as a result. *Id.* Martz informed Randall and other prison officials that he had been sprayed but the defendants left him overnight without a shower, clean clothes, or medical attention. *Id.* The Eighth Circuit overturned the district court's denial of the defendants' motion for summary judgment, finding that "it is not clear that defendants were deliberately indifferent" to Martz's alleged serious medical need because Martz had immediate access to a sink, towel, and soap for decontamination. *Id.* at 358.

Plaintiff argues that *Martz* "is nothing like the facts in this case" because *Martz* involved the accidental use of pepper spray which was not part of a continuing series of events. (ECF No. 128 at p. 17). Plaintiff misinterprets *Martz*. The Eighth Circuit stated, "In those cases in which we have held that the failure to allow decontamination or the denial of medical care *constituted excessive force*, such failures occurred as part of a continuing series of events, beginning with the use of unconstitutional excessive force." *Martz*, 787 F. App'x at 358 (citation omitted) (emphasis added). In other words, the Eighth Circuit's "continuing series of events" language is relevant to whether a defendant used excessive force, not whether a defendant was deliberately indifferent to an inmate's serious medical need. *Id.* Even if the language applied to Plaintiff's deliberate indifference claim, the Court has already determined that Gittemeier did not use excessive force. Thus, even if Defendants denied medical care, their denial did not occur as part of a continuing series of events beginning with the use of unconstitutional excessive force.

Like the plaintiff in *Martz*, Plaintiff had access to running water. (Def. Ex. B; Def. Ex. C). Unlike *Martz*, Plaintiff was not left overnight without clean clothes or medical attention. On the contrary, Gittemeier asked for a nurse shortly after deploying the pepper spray toward Plaintiff.

(Def. Ex. B). Peeper then radioed for a nurse. *Id*. When Plaintiff refused to move away from the sink to be handcuffed, Gittemeier interpreted Plaintiff's conduct as a refusal to see the nurse. (Pl. Ex. 3 at 56:20-25, 87:9-20; Def. Ex. B). Gittemeier's conclusion was reasonable. He testified at his deposition that the nurse generally conducts assessments through the cell door. (Pl. Ex. 3 at 75:9-15). Nurse Rebecca Smith corroborated Gittemeier's testimony during her own deposition:

> I wouldn't be inside the cell. There is another door that opens so that there's just bars there. So if the offender was willing to get his eyes washed out and cooperative with custody, I could step closer and could see a lot more, of course.

(Pl. Ex. 4 at 44:15-23).

Gittemeier also testified that inmates in special security cells must be restrained to receive medical care for the safety of the nurse. (Pl. Ex. 3 at 55:25-56:8; 75:9-15). Indeed, prison policy provides that a failure to cooperate by an offender constitutes refusal of treatment. (Pl. Ex. 3 at 149:17-150:4). Moreover, the record shows that medical services approved the use of pepper spray on Plaintiff before Gittemeier sprayed Plaintiff. (Pl. Ex. 3 at 89:1-13; 91:21-92:3).

Plaintiff argues that Defendants were nonetheless deliberately indifferent to his alleged medical need because Plaintiff replied "yes" when Gittemeier asked if Plaintiff wanted to a see a nurse. (ECF No. 128 at pp. 17-18). Plaintiff's interpretation is contrary to prison safety policy and orders which preclude a nurse from providing medical care to an inmate if the inmate is refusing to comply with prison safety protocols. That cannot be the law. Gittemeier asked for a nurse and Peeper radioed for a nurse. (Def. Ex. B). Plaintiff then declined medical attention by refusing to comply with safety protocols. (Pl. Ex. 3 at 56:20-25, 87:9-20; Def. Ex. B). Neither Gittemeier nor Peeper demonstrated deliberate indifference to Plaintiff's alleged serious medical need at this juncture.

Plaintiff further alleges that he experienced a seizure and suffered injuries to his face after this initial exchange with Gittemeier and Peeper. (ECF No. 128, p. 19). Plaintiff contends he informed Peeper of the seizure and Peeper again refused Plaintiff's request for medical attention. *Id.* Unfortunately for Plaintiff, there is no evidence outside of his own statements that he experienced such injuries or informed Peeper. Plaintiff's own unsupported allegations are not sufficient to survive Defendants' Motion for Summary Judgment. *See Segal v. Metro. Council,* 29 F.4th 399, 403 (8th Cir. 2022) ("To establish a genuine issue of material fact, [the non-movant] may not merely point to self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in his favor.") (cleaned up).

Even if Plaintiff could rely on his own allegations, his statements regarding the incident are inconsistent. On January 21, 2019, Plaintiff reported he did not know whether he had a seizure: "Either I passed out or I had a seizure . . . . The camera footage will tell you if I had one." (Pl. Ex. 5 at p. 18). Plaintiff did not report any facial injuries. *Id.* On January 23, 2019, Plaintiff reported losing consciousness during the January 13 incident but failed to mention any damage to his nose or sinuses. *Id.* at 8. Similarly, Plaintiff's Informal Resolution Request from the same day mentions a seizure but is quiet regarding facial injuries. *Id.* at 23. Further, despite Plaintiff's assertions to the contrary, the record establishes that Plaintiff suffered nasal and sinus issues *before* the January 13, 2019 incident. (Pl. Ex. 5 at 3; Def. Ex. K at 1, 2, 4, 6, 7).

At the summary judgment stage, Plaintiff cannot rely on mere allegations or denials—he must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor. *Carter*, 956 F.3d at 1059. Plaintiff has not done so. A reasonably jury could not return a verdict in Plaintiff's favor on the record currently before the Court. *See Anderson*, 477 U.S. at 248. The undisputed evidence demonstrates that Gittemeier asked for a nurse and Peeper radioed for

18

the nurse. (Def. Ex. B). Plaintiff then declined medical attention by refusing to comply with safety protocols. (Pl. Ex. 3 at 56:20-25, 87:9-20; Def. Ex. B). As for Plaintiff's alleged seizure and subsequent conversation with Peeper, there is simply no evidence in the record despite Plaintiff's own statements to corroborate his assertions. Plaintiff's own self-serving statements are not enough. *See Segal,* 29 F.4th at 403. Neither Gittemeier nor Peeper violated Plaintiff's constitutional rights and both are entitled to qualified immunity. The Court will grant Defendants' Motion for Summary Judgment as to Plaintiff's deliberate indifference claim against Defendants Gittemeier and Peeper.

### V.    Plaintiff's State Law Claims Against Defendant Gittemeier

Plaintiff also brings state law claims of assault and battery against Defendant Gittemeier. Gittemeier argues that he acted lawfully. The Court again agrees with Gittemeier.

Under Missouri law, civil assault is "any unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril." *Devitre v. Orthopedic Ctr. of St. Louis, LLC*, 349 S.W.3d 327, 335 (Mo. banc 2011) (internal quotation marks and citation omitted). Civil battery is any "intended, offensive bodily contact with another person." *Id.* at 334. In Missouri, a corrections officer has the right to use "such physical force as is necessary to . . . enforce discipline or to secure the offender." Mo. Rev. Stat. § 217.405(3).

The Court has already concluded that Gittemeier's conduct was lawful. The record establishes that Gittemeier's intent in using force was to gain compliance from Plaintiff, not to cause bodily harm or the apprehension thereof. The Court now concludes that Gittemeier's conduct was lawful under § 217.405(3). As stated above, Plaintiff was under close observation for "extreme suicidal thoughts." (ECF No. 55 at ¶¶ 13-16; Def. Ex. E). Peeper told Plaintiff to remove an

obstruction from the camera and Gittemeier sprayed Plaintiff when he did not comply. (Pl. Ex. 2 at 35:11-17, 41:19-42:11, 42:12-43:10, 45:10-19, 109:17-20; Pl. Ex. 3 at 48:3-24, 50:8-12, 53:7-13, 58:15-18, 92:21-94.4, 116:6-10). As explained above, the fact that Plaintiff did not cover the camera is not dispositive—it is undisputed that Plaintiff obstructed Defendants' view of the cell while under close observation. *Id.* It is reasonable that Defendants insisted on a clear view of the cell to secure Plaintiff under these circumstances. *See Anderson v.* Driskill, 550 F. Supp. 3d 596, 631-32 (E.D. Ark. 2021), *appeal* dismissed, No. 21-2923, 2021 WL 7160572 (8th Cir. Oct. 18, 2021) ("Because Officer Driskill's conduct was justified, his physical contact with Mr. Warren was not wrongful and thus not battery. For the same reason, Officer Driskill cannot be said to have attempted to commit battery sufficient to establish a claim of assault."). The Court will grant Defendants' Motion for Summary Judgment as to Plaintiff's state law claims against Defendant Gittemeier.

### Conclusion

Defendants Frank Gittemeier and Charles Peeper are entitled to qualified immunity on all claims under 42 U.S.C. § 1983. Further, Plaintiff cannot satisfy the elements of assault or battery against Gittemeier. Thus, the Court will grant Defendants' Motion for Summary Judgment in its entirety.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 109) is **GRANTED** in its entirety.

**IT IS FURTHER ORDERED** that all pending Motions for Leave to File Exhibits Under Seal (ECF Nos. 125, 150, 155) are **GRANTED** for the reasons stated therein.

20

**IT IS FURTHER ORDERED** that all other pending motions (ECF Nos. 136, 142, 148, 152) are **DENIED** as moot.

An appropriate Judgment will accompany this Memorandum and Order.


*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 6th day of July 2022.